Oasis. You may proceed. Thank you. Good morning, Your Honors, and may it please the Court. My name is Christine Skocilis, and I represent Appellant Oasis Legal Finance, LLC, and its holding company. Should we certify this case to the Supreme Court of Georgia? No. I think the Supreme Court of Georgia has already spoken. In Ruth v. Cherokee, the Supreme Court of Georgia dissented. I'm talking about whether the payday status is in this case. Are you asking whether the... Yes, whether we ought to certify the question to the Georgia Supreme Court. No, Your Honor. I don't think that's necessary. Because it is or is not a payday loan. This is not a payday loan. For sure. Yes. And why is that? It is a non-recourse litigation funding agreement. As the Ruth v. Cherokee Court held, a transaction, a financial transaction is not a loan if there is a contingent possibility of not repaying the loan. So in Ruth v. Cherokee, the plaintiffs were personal injury plaintiffs. They received funding. And if those plaintiffs recovered nothing in their personal injury cases, they had no obligation to repay. That is the key that the Ruth v. Cherokee Court relied on in that case. And there's no dispute in this case that OASIS's purchase agreements are non-recourse in nature. Just like the Ruth plaintiffs, plaintiffs here, if they had not succeeded in their underlying personal injury cases, they would have owed OASIS nothing. The district court recited that in its facts, in its order. There's been no dispute that the nature of the purchase agreements that OASIS has are not non-recourse. And the court is, just like the Supreme Court of Georgia did, this court is perfectly capable of looking at the pleadings and looking at that contract and seeing that as a matter of law, it is a non-recourse funding agreement, not a loan. So, we're here actually appealing two issues, and both issues can be disposed of with Ruth v. Cherokee alone. With respect to the first issue, the district court erroneously concluded that the form selection clause in OASIS's purchase agreements is not enforceable because the PLA applied, and the PLA has a provision that the district court misconstrued. That provision states that a, the plain and unambiguous language states that a form selection clause can call for disputes to be heard in the county in which the loan office is located. Now, again, we're not lenders, and these products aren't loaned, but to the extent that the Payday Lending Act did apply, the form selection clause in OASIS's agreement were permissible. This court has stated time and again, courts must presume that a legislature means in a statute what it says and says what it means. But you can't have it both ways. If you win, if you're asserting that this is not a payday loan, then you can't use the word loan to then get out of the other clause, which might nudge against you. No, I agree with that. But I believe, based on the October 22nd, 2018 Ruth v. Cherokee decision, that we don't have to address any of the issues that the district court actually addressed as far as the plain language or the class action waiver issue, because the only basis the district court had for deviating from this court's precedent in Rucker v. OASIS with respect to the form selection clause and cases like Bowen and Randolph and Jenkins with respect to the class action waiver was the applicability of these payday lending acts. And the Georgia Supreme Court says they simply do not apply. We're done. The Supreme Court has spoken and, you know, federal court and diversity is required to apply that law. I haven't gone back to look at all of the memoranda that preceded the district court's But the district court's order did not recognize an argument by OASIS that it was not a payday lender. Did you make that argument below? No. At the time... So why should we entertain that argument on appeal? Well, for two reasons. First, when we briefed the motion to dismiss, our motion to dismiss was filed on May 5th, 2017. Briefing was completed on June 2nd, 2017. At that time, there was only one decision of any Georgia court regarding the applicability of the Payday Lending Act to non-recourse litigation funding agreements, and that was the trial court of Georgia that said, yes, the Payday Lending Act does apply. But that doesn't mean you couldn't have raised the issue. A state trial court decision is certainly not binding on a federal district court exercising diversity jurisdiction. And even if there had been no cases on the issue, you could have tried to be the first to create law. We deem those sorts of scenarios to be waivers all the time in different areas of law. If a claim is open to you, if it's not barred by the substantive law that applies, and you don't raise it, and if it's not jurisdictional, you generally don't get to raise it on appeal. What's different about this case, do you think? Well, in this case, the court is bound to apply the law that has come down from the Supreme Court of Georgia. And until October 22nd, 2018, the Supreme Court of Georgia had never spoken to it. And as of right now, Ruth v. Cherokee is the law. And the Georgia Supreme Court has stated definitively that non-recourse litigation funding agreements are not loans covered by the PLA or GILA. I grant you that. My question is still the same. A party generally can't just say, oh, the law is X, and although I never argued X, you should decide X in my favor. You generally have to preserve issues, at least non-jurisdictional ones, in the district court. And so I'm wondering why we should be in the business of taking up the issue of whether or not the Payday Lending Act even applies to your client. Well, the court certainly has discretion to consider that argument of whether the Georgia Lending Acts apply. In this case, we didn't have a Supreme Court decision at the district court level. It is a pure question of law that will not require any additional facts to be applied or any other decisions to be made. And a substantial injustice would happen if the Georgia Supreme Court says OASIS's purchase agreements are not loans, yet this court does not apply the Georgia Supreme Court law. But that happens all the time when parties don't raise issues. It happens all the time. That the result of the case could have been different had a certain argument been made, and the fact that it hasn't been made doesn't really make a difference. You just move on with what the parties have briefed in an adversarial system, and that's just the way it goes. Well, but in this case, there's no dispute that OASIS's agreement is non-recourse. And even the district court noted in its order that this is a non-recourse agreement under which payments would not be required if plaintiffs are not successful in their underlying cases. We pointed out the intermediate appellate court decision in our appellate briefing, and we were addressing at the district court level two procedural issues. And by the way, even if the Payday Lending Act did apply, we did argue that we should still have an enforceable form selection clause, and we should still have an enforceable class action waiver. For those reasons, this court can also reverse the district court. With regards to the forum selection clause, the language of 16, I think I've got the numbers right, 16-17-2A1. Is that just a venue provision, or is it more than just a venue provision? A lot of Georgia statutes have that same language. I think it's 2C1 that you're referring to, and it does not include the word Georgia County. I don't think it's a venue provision. I think when read together with 16-17-1D, which is the legislative finding by the Georgia General Assembly that relates directly to forum selection clauses, the first sentence says payday lending involves relatively small loans and does not encompass loans that involve interstate commerce. Read together, it's reasonable to conclude, in fact, I think it would be right to conclude that the Georgia General Assembly did not mean to prevent out-of-state lenders from having cases heard in their own home counties, because to decide otherwise, which would be to say that this first sentence of 16-17-1D is surplusage and has no meaning. So, you can avoid the Georgia legislature's stated policy just by having the loan originate in a place other than Georgia? Well, if it's not a Georgia company without a physical presence in Georgia, the court was addressing certain payday lenders, and I think it's reasonable to conclude that it was meaning to prevent Georgia companies with Georgia borrowers from avoiding the Georgia courts, but allowing out-of-state lenders to at least be allowed to have their cases heard at home, and I see a . . . You're safe for rebuttal time. Thank you. Ms. Castor. May it please the Court. Kirk Castor for the Appellees, Lizzie Davis, et al. Why don't I start by addressing the certification question or affirming on alternative grounds? I think the answer is no, this Court neither needs to certify or reach the question of whether these transactions are governed by the payday loans, because it's not an argument raised in the motion to dismiss, and there is a clear avenue during discovery for plaintiffs to prove their claim. In Ruth B. Cherokee funding, the Supreme Court of Georgia stated, it's easy to imagine an agreement with a sham contingent repayment provision that reflects an attempt to evade the usury laws, and the Court properly presented with that claim that a contingent repayment provision as a sham should look beyond the text of the agreement to penetrate to the agency. The argument that this was not governed by the PLA was not raised in the motion to dismiss. The motion to dismiss has been denied, and the case on remand will proceed to discovery, at which point plaintiffs will attempt to prove that we fit squarely within the exception of Ruth B. Cherokee funding, and that claim presumably will eventually be resolved on a motion for summary judgment to determine if the case can proceed to trial. But there's no reason for this Court to raise an argument that has never been raised below, and on this record, it wouldn't be appropriate to certify to the Georgia Supreme Court, both because the issue hasn't been raised and because discovery hasn't been conducted yet on the presence of sham transaction. Turning to the argument about the forum selection clause, the legislative findings, which are included in the actual text of the bill, make it clear that the Georgia—the General Assembly considered it unconscionable for Georgians to have to litigate out of state over the terms of the Payday Lending Act and the GILA, which we think is an incredibly clear indication that forum selection clauses are prohibited. I'm not sure that the language—the language may be what you said, but that requires some parsing. I'm not sure that it's as clear as either side claims. On acting as a devil's advocate to your position, one of the provisions, 2C1, says that—or suggests that you could have a forum selection clause in the county in which the business resides or the loan office is located, and the other provision, 1D, indicates that payday lending doesn't involve interstate commerce. When you read those two together, why isn't OASIS right that the Georgia legislature didn't necessarily preclude out-of-state companies making loans originating out of state to have forum selection clauses? There's kind of three points to response. The first is that the analysis should begin with 1617.1, which says that forcing Georgians to litigate out of state would be unconscionable. It would strike me very remarkable if 1617.1, Georgia found that as a legislative finding, and then the very next provision said, but some cases it's fine, even though we just said it's unconscionable. So I think we start from that presumption whether anything in 1617.2 clearly contradicts and requires the General Assembly to have contradicted its previous statement in 1617.1. As to 1617.2, first, as the Court alluded to, we think that simple designation of county in Georgia law almost universally refers to a Georgia county. In fact, the venue provision in the Georgia Constitution refers to a county, not to a Georgia county, than a separate plenary authority to address foreign corporations. If county in the Georgia Constitution were interpreted to mean any county in the state, that would actually invalidate the foreign motorist and the state long arm statute because there's no plenary authority for the General Assembly to cite venue over a foreign individual inside of the state unless you interpret county to mean Georgia county in the Constitution. As to the point about the limitation on interstate commerce, that issue has been specifically addressed by the Georgia Supreme Court. In Western Sky, the Georgia Supreme Court said, this language is simply a legislative finding of fact that is obviously factually inaccurate. It dismissed the language and said, first of all, it was intended as a legislative finding of fact, not as having statutory significance, and second, the General Assembly was clearly wrong in that legislative finding of fact. The Act clearly does apply to lenders operating out of state, and in light of that clear determination by the Georgia Supreme Court, to attempt to read that language as clear evidence that was written to the categorical language in 1671, that it's unconscionable to have to litigate the case out of state, seems to me to make the matter very simple. If I could turn also to the class action waiver effect, we think that this analysis should begin with Georgia Code Annotated 13.8-2, which says that a contract that is against the policy of the law cannot be enforced, and it gives, as an example, a contract that is against policy as a contract tending to corrupt legislation. So under Georgia law, the public policy standard is whether it tends to corrupt legislation. It is not required that the PLA or the GILA categorically state that waivers of class actions are impermissible, or even that a waiver of class action would entirely derail the statutory scheme. The standard that needs to be applied is simply, would a waiver of class action under the way tend to corrupt that legislation? And we think there's clear evidence from the text of the legislation that we can at least get to that tending to corrupt standard. The first is that in two separate portions of the legislation, it refers to the ability of litigants to bring a class action, and it creates the availability of that remedy. In addition, it also refers to that not just as a remedy but as a right. In 1617-2, it refers to a right to bring class actions in talking about determining unconscionability of arbitration clauses. And so there's a clear indication in the text of the statute that the ability to bring a class action is an important part of the remedial scheme, therefore removing it or allowing its waiver would tend to corrupt the legislation. In addition, some legislative history is relevant here. When the General Assembly enacted the PLA, it identified, again, in its legislative findings in the bill, not simply from floor statements, that payday lending and small usurious loans were already prohibited under Georgia law. However, there was a need for additional legislation because over time, unscrupulous lenders had repeatedly designed artifices built into contracts to make it difficult to enforce usury laws. And they point to several examples, for example, forum selection, which they designate as unconscionable, or the attempt to nominally use banks, which are exempt from the regulation, as the loan provider even though the real party of interest is the payday lender. Or, for example, what the Georgia Supreme Court talked about in Ruth, which is where loan terms are disguised to create the appearance of a contingent loan when there is, in fact, a loan. And the General Assembly stated its clear intention that any type of artifices or any provisions added to contracts with the goal of making it harder for people who are obtaining small loans and are under severe financial circumstances to obtain relief in court is to be prohibited. So we think the text and the clear legislative history all are indicative that allowing a class action waiver would tend to corrupt the legislation. There are no Georgia cases on those issues as of now? The most useful Georgia case is a case that simply explains the legislative history of the PLA and talks about the fact that one of the purposes of the PLA was to limit clever artifices that prohibit effective enforcement. So we'd say that Georgia case is consistent with our interpretation of legislative history. We also think the text is very significant, in particular that a class action is specifically designated as a right. Now a large number of the cases that the appellants cite to are cases that arise in the arbitration context. That is a determination of when there is arbitration clause that includes or would effectively remove the ability to bring a class action, whether that is permissible. Appellant didn't get a chance to get into this in her statement, but to the extent that it's going to come up in rebuttal, we think that those cases arrive in a fundamentally different context. They are dealing with an issue with whether attempts to limit arbitration under state law are preempted under the FAA. It appears that the General Assembly attempted to grapple with that concept when they wrote the PLA, and how they dealt with arbitration is rather than barring arbitration, which it appears clear the General Assembly would have disfavored. What they said is arbitration is not enforceable if it's unconscionable, which they interpreted at the time to be consistent with Supreme Court jurisprudence on the FAA. It may well be that that provision does not survive Concepcion, which is not before the court. And what they say is they identified unrelevant factors that the court should consider in determining unconscionability specifically for an arbitration. And in that section, they identify that there's a right to a class action and that an arbitration provision that avoids a class action would be evidence that it is unconscionable under Georgia law. Now, of course, for arbitrations, it's only a factor because that was the General Assembly's attempt to be consistent with and avoid preemption by the FAA. But the clear import of that provision is that the General Assembly considered removing the right to class action to be contrary to the statutory scheme. So when you deal with a class action waiver standing on its own, not protected by the benefit of the FAA, it seems clear how Georgia public policy would dictate. And so we ask for a simple ruling that Georgia public policy in the context of this statute is that class action waivers, specifically in payday loans that would be governed by the PLA or GILA, are non-enforceable. Let me ask you this procedural question. I forgot to ask it of your opponent, but I'll ask you when she gets up on rebuttal. The district court certified, at least in its initial order, only the class action waiver issue. There were no other orders of certification. That was it? That was the only one? No. I mean, there's a tiny ambiguity in the certification order. What the certification order says is that the class action question raises a question of sufficient complexity for this court review. Therefore, I'm certifying my motion. And so I think what I'd let the appellants speak for themselves. I think what they would say is that since the final sentence of that order is certifying the order, that they can bring both questions. But I'm not clear that that's actually right. The district court's finding was only that the class action question warranted review by this court. Yeah, I see the sentence you're talking about. Okay. Thank you. All right. Thank you. So that way you can not get interrupted with the rest of your rebuttal. You think the district court's certification allows you to bring up all the issues or just a class action waiver issue? All of the issues. Under section 1292B, this court has interlocutory jurisdiction to review an order. And that jurisdiction exists regardless of the question that was actually certified by the district court. It can even consider different questions. And indeed, this court allowed interlocutory appeal of both the form selection clause and class action issues. I wanted to address a couple of points that counsel made. First, that discovery is necessary in this case. It is not. The Georgia Supreme Court was capable of looking at the Ruth v. Cherokee agreement and determining that the non-recourse contingency was not illusory. There has been no dispute that plaintiffs, clients of Oasis's who do not recover in their personal injury actions, owe Oasis nothing. That is not illusory. And the Georgia Supreme Court even pondered whether in a situation where you have ongoing personal injury litigation, could you ever say that that contingency is illusory? To do so would be like saying there is a 0% chance in any one of those cases of a defense verdict. There is a 100% chance of a sufficient plaintiff's verdict. That just, you can't say that. So, I don't see, I agree with the Supreme Court of Georgia that a case where underlying personal injury litigation is the contingency that repayment depends on could ever be illusory. Regarding counsel's argument regarding the class action waiver, I think he's reading this Court's cases in Bowen and Jenkins and Randolph wrong. I do understand that they arose in the context of an arbitration provision. But this Court looked at at least the substantive unconscionability under Georgia law in determining in those cases the class action waivers were not unconscionable, kind of for two reasons. First is this Court said in Bowen, merely permitting consumers to bring class actions under a statute does not create a blanket non-waivable right to bring class actions. And in Jenkins, this Court also noted that contractual provisions waiving class action does not affect a substantive right. But the real key here, which counsel didn't mention and which the district court ignored, is that OASIS's purchase agreements include a fee-shifting provision under which the plaintiffs, should they prevail, would be fully compensated for their reasonable attorney's fees and costs. And this Court has said repeatedly that in that situation, even if you have very small amounts of money at issue for each individual plaintiff, that fee-shifting is enough to bring us out of unconscionability. It's enough for them to be assured representation. And I would actually argue in this case that the OASIS agreements call for cases to be heard not in arbitration, which can be expensive where both sides have to pay the arbitrators and the companies. They have to file in state court in Cook County. So they would have the very minimal overhead cost of filing a municipal action in Cook County, Illinois. So actually in that case, I think this is a more, a class action waiver provision that fits more into the Court's precedent. I think we have your case. Thank you, Your Honors. And we'll move to the last case of the docket.